NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel J Rodriguez, | No. CV-20-00897-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| QS Next Chapter LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Certification and Settlement. (Doc. 14).

**I.      Background**

Daniel J. Rodriguez ("Plaintiff") brought this action against QS Next Chapter LLC f/k/a Express Interlock LLC d/b/a QuickStart Ignition Interlock ("Defendant") under the Consumer Leasing Act ("CLA"), alleging inadequate disclosures in Defendant's ignition interlock program service agreements. (Doc. 1). In addition to Plaintiff, more than 6,100 individuals in Arizona signed materially identical agreements during the relevant time period with Defendant. The parties have reached a class settlement whereby Defendant will create a settlement fund to resolve the claims of the proposed class. (Doc. 14 at 2).

Defendant has stipulated to create a non-reversionary class settlement fund in the amount of $21,490.00, which far exceeds the maximum allowable statutory damages available under the CLA had the matter proceeded to trial. (Doc. 14 at 2). Defendant also agrees to pay Plaintiff $1,500.00 for his services to the class and award of attorneys' fees

1  and costs to Plaintiff's Counsel in an amount to be determined after final certification of
2  the settlement.  Defendant will also pay for the administration of this matter, including the
3  direct mailing of notices to the more than 6,100 class members.  (*Id.*)

4  The parties jointly seek an Order certifying the settlement class, appointing Plaintiff
5  and his counsel as representatives for the class, preliminarily approving the proposed
6  settlement, and directing class notice in the form and manner prescribed by the parties'
7  agreement. (Doc. 14).  For the reasons stated herein, the Court finds that the settlement is
8  fair and reasonable and meets all of the statutory requirements and, therefore, will grant
9  the Motion and set a final fairness hearing.  The only item the Court finds to be lacking in
10 the Motion is an explanation of the work conducted by Plaintiff to justify an award of
11 $1,500.00 to him.  The parties shall be prepared to address this issue at the hearing.

12 **II.    Legal Standard**

13 The Ninth Circuit has declared a strong judicial policy for settlement of class
14 actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).
15 Nevertheless, where, as here, "parties reach a settlement agreement prior to class
16 certification, courts must peruse the proposed compromise to ratify both [1] the propriety
17 of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d
18 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d
19 935, 949 (9th Cir. 2011) (holding when parties seek approval of a settlement negotiated
20 prior to formal class certification, "there is an even greater potential for a breach of
21 fiduciary duty owed the class during settlement.").

22 When parties seek class certification only for the purposes of settlement, the Court
23 "must pay 'undiluted, even heightened, attention' to class certification requirements"
24 because, unlike in a fully litigated class action suit, the court will not have future
25 opportunities "to adjust the class, informed by the proceedings as they unfold." *Amchem*
26 *Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord Hanlon v. Chrysler Corp.*, 150
27 F.3d 1011, 1019 (9th Cir. 1998).  The parties cannot "agree to certify a class that clearly
28 leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on

1  the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005); *see also Amchem*, 521 U.S., at 622 (observing that nowhere does Rule 23 say that certification is proper simply because the settlement appears fair). In conducting the second part of its inquiry, the "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'" *Staton*, 327 F.3d at 952 (*quoting Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, "'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class.'" *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (*quoting In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004)). In this Order, therefore, the Court will only "determine [ ] whether a proposed class action settlement deserves preliminary approval" and lay the groundwork for a future fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the fairness hearing, after notice is given to the Proposed Class members, the Court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the Settlement Agreement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). After the fairness hearing, the Court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.

## III.   Discussion

### A.   Preliminary Certification of the Settlement Class

A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ("Rule") 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978), the Court must conduct a rigorous inquiry before certifying a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403–05 (1977).

As noted above, despite the parties' agreement that a class exists for the purposes of settlement, this does not relieve the Court of its duty to conduct its own inquiry. *Mathein v. Pier 1 Imports (U.S.), Inc.*, 2017 WL 6344447, at *7 (E.D. Cal. Dec. 12, 2017). Typically, when parties settle before the class is certified, the court is denied adversarial briefs on the class certification issue. *Id.* Therefore, although Defendant agrees, at least for the purposes of settlement, that class treatment is appropriate, the Court must nonetheless decide whether the issues in this case should be treated as class claims pursuant to Rule 23. *Id.*

#### 1.   Rule 23(a)

Rule 23(a) restricts class actions to cases where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon*, 150 F.3d at 1019.

##### a.   Numerosity

A proposed class must be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). While the numerosity requirement is not tied to any fixed numerical threshold, generally, a "class of 41 or more is usually sufficiently numerous." 5-23 Moore's Federal Practice—Civil § 23.22 (2016). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982*); see also id.* (court is "inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71 . . .").

Here, the parties provide that the class includes "All persons (a) with an address in Arizona, (b) who signed an ignition interlock Program Service Agreement with QS Next Chapter, LLC f/k/a Express Interlock LLC d/b/a QuickStart Ignition Interlock for personal, family, or household purposes, (c) with an initial lease term greater than four months, and (d) which was in effect as of December 31, 2019 or had been terminated no earlier than May 8, 2019." The parties agree that this includes 6,140 potential Class Members, including Plaintiff. The Court takes the parties' avowal that there are 6,140 members of the Proposed Class as true. Joinder would thus be impracticable. The Court, therefore, finds the numerosity requirement has been met.

### b. Commonality

Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed. R. Civ. P. 23(a)(2). Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that all questions of law and fact be common." *West*, 2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019). The commonality requirement is met "when the common questions it has raised are apt to drive the resolution of the litigation . . . ." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal quotation and citation omitted).

Here, the claims asserted by Plaintiff and the Proposed Class originate from anyone

in Arizona who signed an ignition interlock Program Service Agreement with Defendant. (Doc. 14 at 2). The Court's resolution of Plaintiff's Claims will therefore resolve the common claims of the class. *See Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). The Court, therefore, finds the commonality requirement has been met.

### c.  Typicality

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but the claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). This ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S., at 158 n.13.

Here, Plaintiff alleges that he and all of the Proposed Class members used Defendant's device and were provided the same notice. Defendant agrees. Therefore, the Court concludes that the claims of Plaintiff are typical of the claims of the Proposed Class and finds that the typicality requirement has been met.

### d.  Adequacy of Representation

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class? *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications

of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem*, 521 U.S., at 626 n.20. Moreover, the examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification. That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's interests and his course of legal redress do not appear to be at odds with those of the Proposed Class and he appears to have no conflict of interest with the members of the Proposed Class. Additionally, Plaintiff's counsel has overseen many class action cases and class action settlements and has received commendation in this District and others for this work. (Doc. 14-1). Therefore, the Court finds that there are no apparent conflicts present.

The second prong of the adequacy inquiry examines the vigor with which Plaintiff and his counsel have pursued the common claims. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Probing Plaintiff and his counsel's rationale for not pursuing further litigation, however, is inherently more complex. "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'" *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 620).

Here, the parties appear to have begun settlement negotiations almost immediately. (Doc. 14). While robust discovery did not occur in this matter, the Court nonetheless finds the parties' reasons for pursing settlement are satisfactory. The parties state they are seeking to settle in light of the risks and costs of continued litigation and the statutory cap on damages and the Court is satisfied with those reasons. Therefore, the Court finds that

the adequacy of representation requirement has been met.

### 2. Rule 23(b)

In addition to satisfying all four requirements of Rule 23(a), Plaintiff must show the Proposed Class meets one of three threshold requirements under Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). That is, Plaintiff must show either: (1) prosecuting separate actions would create a risk of inconsistent or dispositive adjudications; (2) the opposing party's actions have applied to the class generally such that final relief respecting the whole class is appropriate; or (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

Here, the parties argue this case qualifies for certification under Rule 23(b)(3). (Doc. 14 at 12). A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon*, 150 F.3d at 1022; *see also Amchem*, 521 U.S., at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). Predominance requires that questions common to the Proposed Class predominate over individualized inquiries. Fed. R. Civ. P. 23(b)(3).

Here, the common issues of law and fact greatly predominate as all of the Proposed Class members' claims arise from the use of Defendant's device. This commonality predominates over any possible individual issues among Proposed Class members. *Bogner*, 257 F.R.D. at 534; *Brink v. First Credit Res.*, 185 F.R.D. 567, 572 (D. Ariz. 1999)

("courts routinely certify classes in cases such as this, in which the alleged misconduct occurs in the form of a standardized writing by a common defendant"); *see also Gonzalez v. Germaine Law Office PLC*, 2016 WL 3360700, at *3 (D. Ariz. June 1, 2016). Additionally, Plaintiff does not have any unique claims that are not common to the Proposed Class. The Court, therefore, finds that common questions of law and fact predominate.

### b.    Superiority

To satisfy Rule 23(b)(3), Plaintiff must also prove class resolution of the case is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, based on the relatively small amounts that the Proposed Class members are allowed under the statute, the recoverable damages are likely too small to justify individual litigation. *Gonzalez*, 2016 WL 3360700; *see also Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, 2015 WL 9478548, at *5 (N.D. Ind. Dec. 29, 2015) ("It is doubtful that many individual claims would be pursued in light of the expense of litigation and the fact that separate lawsuits would be uneconomical for potential class members."). The Court, therefore, finds that a class action is the superior form to resolve these claims.

Therefore, the Court finds that class treatment of the claims appears to be warranted and, therefore, the Court preliminarily certifies this matter as a class action.

### B.    Preliminary Evaluation of Fairness of Proposed Class Action Settlement

Having determined that class treatment appears to be warranted, the Court now decides whether to preliminarily approve the Settlement Agreement. *Gonzalez*, 2016 WL 3360700, at *4. Under Rule 23(e), a court must evaluate a proposed settlement for

fundamental fairness, adequacy, and reasonableness before approving it. Fed. R. Civ. P. 23(e)(2). Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (internal quotation and citation omitted). However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone" are insufficient. *In re Bluetooth*, 654 F.3d at 946. In these cases, courts must show not only a comprehensive analysis of the above factors, but also that the settlement did not result from collusion among the parties. *Id.* at 947. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *accord In re Gen. Motors*, 55 F.3d at 805 (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified").

However, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotation and citation omitted). The Court is cognizant that "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

At this time, the Court will simply review of the terms of the parties' Settlement Agreement for the purpose of resolving any glaring deficiencies before ordering the parties

to send the proposal to class members and conducting the final fairness hearing. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Because it is provisional, courts grant preliminary approval of a class action settlement where the proposed settlement does not indicate grounds to doubt its fairness. *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (*quoting* Manual for Complex Litigation (Third) § 30.41).

The Settlement Agreement provides that Defendant would create a Settlement Fund of $21,490.00. (Doc. 14 at 3). All Proposed Class members who respond to the mailed-out notice will receive a pro-rated share of the Settlement Fund. (*Id.*) The parties expect, based on historical claims rates in similar actions, the recovery to be between $17.00 and $35.00 for each Proposed Class member. Defendant proposes to separately pay Plaintiff an additional $1,500.00 in the form of a service award for his efforts in obtaining a class-wide recovery. (*Id.*) Any and all undistributed funds will be distributed as a *cy pres* distribution to Special Olympics of Arizona. (*Id.*) The agreement provides that Defendant will make available the names and recent addresses of those individuals to the class administrator, as Defendant's business records reflect the necessary contact information for each of the 6,140 potential class members. The class administrator will then take all reasonable steps necessary to ensure that each potential class member receives direct mail notice, including updating addresses by reference to U.S. Postal Service databases and sending the notices with forwarding addresses requested. (*Id.* at 4). The parties' Agreement evidences good faith negotiation and a thorough process for noticing the Proposed Class members.

As there is no evidence to suggest that the settlement was negotiated in haste nor is there evidence of collusion, the Court is preliminarily satisfied that the Settlement Agreement was the product of serious, informed, non-collusive negotiations.

### 2. Preferential Treatment for Plaintiff

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect

- 11 -

negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

Here, each Proposed Class member stands to recover between $17.00 and $35.00, and Plaintiff stands to receive $1,500.00. While not unreasonable on its face, given this disparity, the parties should be prepared to explain Plaintiff's efforts taken as Proposed Class representative and any actual damages he sustained as a result of Defendant's actions. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving an incentive payment of 0.17% of total settlement to the named plaintiff because he had "spent hundreds of hours with his attorneys and provided them with an abundance of information"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571–72 (7th Cir. 1992) (upholding a district court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services" in a settlement of $45 million).

### 3. Settlement Fund Within Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. As previously discussed, the CLA drastically limits the potential class action recovery for Proposed Class members to actual damages, attorneys' fees and costs, and an amount determined "without regard to a minimum recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]" 15 U.S.C. § 1692k(a).

The parties non-reversionary class settlement fund totaling $21,490.00 is more than the maximum allowable statutory damages had the class proceeded to trial.  Moreover, the Court is satisfied that the expected recovery range between $17.00 and $35.00 falls within the recovery range of similar settlements.  *See, e.g., Taylor v. TimePayment Corp.*, No. 18-378, 2020 WL 906319, at *2 (E.D. Va. Feb. 24, 2020) (approving CLA and Truth in Lending Act settlement providing claimants $26.32 each); *Spencer*, 2019 WL 1034451, at *3 (CLA settlement provided $36.35 per claimant); *Gonzalez*, 2016 WL 5844605 at *2 ($19.25 each in FDCPA class settlement); *Schuchardt*, 314 F.R.D. at 684 ($15.10 per person in FDCPA class settlement).

The cash relief provided to class members here greatly exceeds the one-percent statutory damages cap.  *See* 15 U.S.C. § 1640(a)(2)(B).  The Court preliminarily finds that the expected range of recovery appears to be the product of serious, informed, non-collusive negotiations.  However, on or before the fairness hearing, the parties should present or be prepared to present evidence regarding any actual damages Plaintiff suffered.

**C.    Proposed Class Notice and Administration**

Federal Rule of Civil Procedure 23(c)(2)(B) governs the requirements of notice in Rule 23(b)(3) class actions.  The Rule provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Further, the notice must clearly and concisely state in plain, easily understood language:

    (i)    the nature of the action;
    (ii)    the definition of the class certified;
    (iii)    the class claims, issues, or defenses;
    (iv)    that a class member may enter an appearance through an attorney if the member so desires;
    (v)    that the court will exclude from the class any member who requests exclusion;
    (vi)    the time and manner for requesting exclusion; and
    (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B).  In addition, due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the parties propose a direct mail notice program to be administered by a third-party class administrator—First Class, Inc.—which will use all reasonable efforts to provide notice directly to each potential class member. (Doc. 14). The parties state that they have made it as convenient as possible for individuals to confirm their class membership and indicate their desire to participate in the settlement fund. The parties state that the notice will inform all class members of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Plaintiff's individual award and his request for an award of attorneys' fees and expenses for her counsel; and (6) how to submit a claim and make inquiries, and where to find additional case-related information. Fed. R. Civ. P. 23(c)(2)(B). Importantly, the direct mail notice to potential class members will include a straightforward, pre-addressed detachable claim form to be completed and returned to the class administrator. (Doc. 14 at 16-17).

The Court approves the form of notice and believes direct mail, with all reasonable efforts made to obtain updated addresses, is the "best notice that is practicable under the circumstances," and protects the rights of the class members. Fed. R. Civ. P. 23(c)(2)(B).

**IV.  Conclusion**

The Court preliminarily finds that the Proposed Class meets the requisite certification standards and grants conditional certification of the Proposed Class for settlement purposes. The Court also preliminarily approves the Settlement Agreement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the members of the Proposed Class. Therefore, the Court will set a final fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2).

Accordingly,

**IT IS ORDERED AS FOLLOWS:** The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto. In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715, First Class, Inc.—the designated Class Administrator—will cause to be served, on behalf of Defendant, written notice of the proposed class settlement on the United States Attorney General and the Attorney General of the State of Arizona.

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Lawsuit is hereby preliminarily certified as a class action on behalf of the following class of plaintiffs ("Class Members") with respect to the claims asserted in the Lawsuit:

> All persons (a) with an address in Arizona, (b) who signed an ignition interlock Program Service Agreement with QS Next Chapter, LLC f/k/a Express Interlock LLC d/b/a QuickStart Ignition Interlock for personal, family, or household purposes, (c) with an initial lease term greater than four months, and (d) which was in effect as of December 31, 2019 or had been terminated no earlier than May 8, 2019.

Defendant represents that there are approximately 6,140 potential Class Members, including Plaintiff. This preliminary certification is for settlement purposes only and shall not be deemed to be an adjudication of any fact or issue.

Pursuant to Rule 23, the Court appoints Daniel J. Rodriguez as the Class Representative. The Court also appoints Jesse S. Johnson of Greenwald Davidson Radbil PLLC as Class Counsel. This Court preliminarily finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Rule 23, namely:

A. The Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

B. There are questions of law and fact common to the Class Members, which predominate over any individual questions;

C. Plaintiff's claims are typical of the claims of the Class Members;

D. Plaintiff and Class Counsel have fairly and adequately represented and

protected the interests of all Class Members; and

E.     Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

This Court approves the form and substance of the Direct Mail Notice, as well as the long-form class notice. In accordance with the Agreement, the class administrator will mail the Direct Mail Notice to the Class Members as expeditiously as possible, but **not later than 21 days after the Court's entry of this order**. The class administrator will confirm, and if necessary, update the addresses for the Class Members through standard methodology that the class administrator currently uses to update addresses.

Any Class Member who wishes to receive a pro-rata portion of the Settlement Fund must send a valid, timely claim form to First Class, Inc. with a postmark date **not later than 60 days after the Court's entry of this order**.

Any Class Member who desires to be excluded from the class must send a written request for exclusion to First Class, Inc. with a postmark date **not later than 60 days after the Court's entry of this order**. To be effective, the written request for exclusion must state the Class Member's full name, address, telephone number, and email address (if available), along with a statement that the Class Member wishes to be excluded, and his or her signature. Any Class Member who submits a valid and timely request for exclusion will not be bound by the terms of the Agreement.

Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court **not later than 60 days after the Court's entry of this order**. Further, any such Class Member must, within the same time period, provide a copy of the written objection to Class Counsel, attention: Jesse S. Johnson, Greenwald Davidson Radbil PLLC, 7601 N. Federal Hwy., Suite A-230, Boca Raton, FL 33487; and counsel for Defendant, David E. Funkhouser III, Spencer Fane LLP, 2415 E. Camelback Road, Suite 600, Phoenix, Arizona 85016.

To be effective, the written objection must:

(a)  Contain a heading which includes the name of the case and case number;

(b)  Provide the name, address, telephone number, and email address (if available) of the Class Member filing the objection;

(c)  Be filed with the Clerk of the Court no later than 60 days after the Court preliminarily approves the settlement;

(d)  Be sent by first-class mail to Class Counsel and counsel for Defendant at the addresses designated in the class notice, postmarked no later than 60 days after the Court preliminarily approves the settlement;

(e)  Contain the name, address, bar number, and telephone number of the objecting Class Member's counsel, if represented by an attorney. If the Class Member is represented by an attorney, he/she or it must comply with all applicable laws and rules for filing pleadings and documents in the U.S. District Court for the District of Arizona;

(f)  Contain a statement of the specific basis for each objection; and

(g)  Include the Class Member's signature.

Any Class Member who has timely filed an objection may appear at the final fairness hearing, in person or by counsel, to be heard to the extent allowed by the Court, applying applicable law, in opposition to the fairness, reasonableness, and adequacy of the settlement, and on the application for an award of attorneys' fees, costs, and expenses.

Upon final approval from the Court, the class administrator will mail a settlement check to each Class Member who submits a valid, timely claim form. Each participating Class Member will receive a pro-rata portion of the $21,490.00 Settlement Fund.

The Court will conduct a fairness hearing on **March 31, 2021 at 10:00 a.m.** at the Sandra Day O'Connor United States Courthouse, 401 West Washington Street, Phoenix, Arizona 85003, to review and rule upon the following issues:

A.  Whether this action satisfies the applicable prerequisites for class action

treatment for settlement purposes under Rule 23;

B.     Whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

C.     Whether a Final Order and Judgment, as provided under the Settlement Agreement, should be entered, dismissing the Lawsuit with prejudice and releasing the Released Claims against the Released Parties; and

D.     To discuss and review other issues as the Court deems appropriate, including Plaintiff's proposed $1,500.00 award.

Attendance by Class Members at the final fairness hearing is not necessary. Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. Class Members wishing to be heard are, however, required to appear at the final fairness hearing. The hearing, however, may be postponed, adjourned, transferred, or continued without further notice to the Class Members.

Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), Plaintiff's petition for an award of attorneys' fees and reimbursement of costs and expenses for Class Counsel must be filed with the Court **no later than 30 days after the Court's entry of this order**. Any opposition to Plaintiff's fee and expense petition must be filed with the Court **no later than 60 days after the Court's entry of this order**. Plaintiff's reply memorandum in further support of his fee and expense petition must be filed with the Court **no later than 14 days after submission of any opposition to the petition**.

Submissions by the Parties in support of the settlement, including memoranda in support of final approval of the proposed settlement, and responses to any objections, must be filed with the Court **no later than 28 days prior to the final fairness hearing**. Any opposition to the foregoing must be filed with the **Court no later than 14 days prior to the final fairness hearing**. Reply memoranda in support of the foregoing must be filed with the Court **no later than 7 days prior to the final fairness hearing.**

This Order will be null and void if any of the following occur:

A. Any specified material condition to the settlement set forth in the Agreement is not satisfied and the satisfaction of such condition is not waived in writing by the Parties; or

B. The Court approves the Agreement, including any amendment thereto approved by the parties, but such approval is reversed on appeal and such reversal becomes final by lapse of time or otherwise.

If the Agreement and/or this Order are voided, then the Agreement will be of no force and effect, and the parties' rights and defenses will be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this order never entered.

This Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Agreement.

**IT IS FURTHER ORDERED** that the parties' Joint Motion for Conditional Certification and Preliminary Approval of Class Action Settlement Agreement (Doc. 26) is **GRANTED**. The Court will set a Final Fairness Hearing for **March 30, 2021 at 10:00 a.m.** in Courtroom 605, 401 W. Washington St., Phoenix, Arizona, 85003.

Dated this 18th day of November, 2020.

Honorable Diane J. Humetewa
United States District Judge